UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JAMES EVERETT SHELTON,** individually and on behalf of all those similarly situated, | Case No. 1:19-cv-01378 |
| Plaintiff, | |
| | JURY DEMANDED |
| v. | |
| **RESORTCOM INTERNATIONAL, LLC.,** | |
| Defendant. | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff James Everett Shelton ("Plaintiff" or "Mr. Shelton") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

2. Resortcom International, LLC. ("Resortcom" or "Defendant") made a pre-recorded telemarketing call to Mr. Shelton's cellular telephone number in violation of the TCPA.

3. The Plaintiff never consented to receive the call, which was placed to him for telemarketing purposes.  Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff James Everett Shelton is a Pennsylvania resident.

6. Defendant Resortcom International, LLC. is a Nevada limited liability company with its principal place of business in Nevada.

## Jurisdiction & Venue

7. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

8. The Defendant regularly engages in business in this district, including making telemarketing calls into this district and soliciting business from this district.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, as the Defendant made a prerecorded telemarketing call to the Plaintiff in this district, where he was attending college at Case Western Reserve University.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service … or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers, services for which the called party is charged for the call, and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

16. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (June 6, 2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

17. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

18. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203.

19. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

20. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day.  www.robocallindex.com (last visited May 3, 2019).  YouMail estimates that 2019 robocall totals will exceed 60 billion.  *See id.*

21. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018.  FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 3, 2019).

### Factual Allegations

22. Defendant Resortcom provides a variety of services to resorts and similar entities, including marketing and selling discounted vacation packages to increase travel to its clients' resorts.

23. To generate new business for its clients, Resortcom relies on telemarketing.

24. One of the telemarketing strategies used by Resortcom involves the use of automated and pre-recorded calls to solicit potential customers.

<u>The Calls to Mr. Shelton</u>

25. Plaintiff Shelton is a "person" as defined by 47 U.S.C. § 153(39).

26. Plaintiff's cellular telephone number is (484) 626-XXXX.

27. That number is on the National Do Not Call Registry.

28. Resortcom placed an automated and prerecorded telemarketing call to Mr. Shelton's cellular telephone on April 3, 2019.

29. The following pre-recorded message was played:

> Hi, because you are a valued Delta airlines customer you'll receive 999 dollar credit towards your next trip.  For further details, press 1 now.  To be placed on the do not call list, press 2 now.

30. The use of pre-recorded messages is consistent with the use of an Automatic Telephone Dialing System ("ATDS"), as it would be illogical to manually call numbers only to then play a pre-recorded message.

31. The Caller ID Number on the call was (484) 576-5947. Resortcom is not located in the 484 area code, but rather "spoofed" the Caller ID to make it appear to Plaintiff that the call was coming from a local number.

32. These facts are also consistent with the use of an ATDS, as it takes computerized dialing software to manipulate a Caller ID.

33. Because the company making the call was not identified in the pre-recorded message, the Plaintiff responded by pressing "1" to speak with a live individual.

34. The live individual offered Plaintiff a discounted vacation package that could be used at certain destinations.

35. The Plaintiff feigned interest in the call in order to determine the identity of the caller.

36. The Plaintiff was transferred to another agent, who identified his company as "Vacation Discount International."

37. The agent informed Plaintiff he would receive a certificate for a discounted vacation.

38. Plaintiff was then transferred to the verification department. The agent at the verification department confirmed that his company's name was "Vacation Discount International" and informed Plaintiff that the charge that would appear on his credit card would identify the merchant as "Holiday Billing."

39. Neither "Vacation Discount International" nor "Holiday Billing" appear to be registered companies or fictitious names in any state or jurisdiction.

40. To secure the real company name, the Plaintiff provided his credit card information during the call but froze the card so that no charges could go through.

41. Plaintiff received a notification from his credit card company that "Holiday Billing" had attempted to charge his credit card.

42. Plaintiff's credit card company informed him that the merchant who attempted to charge his card was "Holiday Billing" and that the merchant's address was 6850 Bermuda Rd., Las Vegas, NV 89119.

43. 6850 Bermuda Road, Las Vegas, NV 89119 is Resortcom's headquarters.

44. Resortcom represents on its website that it engages in telemarketing to sell certificates for discounted vacation packages to increase travel to its clients' resorts.

45. Resortcom has previously been sued for violating the TCPA's automated calling provisions.

46. Prior to initiating this lawsuit, Plaintiff wrote a letter to Resortcom explaining the circumstances of the illegal call he received, asking it for any evidence of his consent to call him, which he asserted did not exist, and giving it an opportunity to explain its actions.

47. Resortcom did not respond to Plaintiff's letter.

48. Plaintiff and other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the proposed class.

**Class Action Allegations**

49. As authorized by Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit on behalf of other persons or entities throughout the United States.

50. The proposed class is tentatively defined as:

All persons within the United States: (a) to whom Resortcom, and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) promoting Resortcom's and/or its clients' products or services; (c) to a cellular telephone number or a number for which they are charged for the call; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint through the date of class certification.

51. The Plaintiff is a member of the class.

52. Excluded from the class are the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of the judge's staff and immediate family.

53. Class members are identifiable through phone records and phone number databases that will be obtained through discovery.

54. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

55. There are questions of law and fact common to Plaintiff and the proposed class, including:

   a. Whether the Defendant placed automated or prerecorded telemarketing calls without obtaining the recipients' valid prior express written consent;

   b. Whether the Defendant's TCPA violations were negligent, willful, or knowing; and

   c. Whether the Plaintiff and the class members are entitled to statutory damages because of the Defendant's actions.

56. Plaintiff's claims are based on the same facts and legal theories as class members and therefore are typical of the class members' claims.

57. Plaintiff is an adequate representative of the class because his interests do not conflict with the class's interests, he will fairly and adequately protect the class's interests, and he is represented by counsel skilled and experienced in litigating TCPA class actions.

58. The Defendant's actions are applicable to the class and to Plaintiff.

59. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records and databases maintained by Defendant and others.

60. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case given the small recoveries available through individual actions.

**Legal Claims**

**Count One:**
**Violations of the TCPA, 47 U.S.C. § 227(b)**

61. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62. The foregoing acts and omissions of Resortcom and/or its affiliates, agents, and/or other persons or entities acting on Resortcom's behalf constitute numerous and multiple

violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with a pre-recorded message to Plaintiff's cellular telephone number.

63. As a result of Resortcom's and/or its affiliates, agents, and/or other persons or entities acting on Resortcom's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the class presumptively are entitled to an award of $500 in damages for each and every call made.

64. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Resortcom and/or its affiliates, agents, and/or other persons or entities acting on Resortcom's behalf from making calls, except for emergency purposes, using an ATDS or an artificial or prerecorded voice in the future.

65. Resortcom's violations were negligent, willful, or knowing.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed class;

B. Appointment of Plaintiff as representative of the class;

C. Appointment of the undersigned counsel as counsel for the class;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, to any number using an ATDS or an artificial or prerecorded voice in the future;

F. An award to Plaintiff and the class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


Dated: June 14, 2019

PLAINTIFF,
By his attorneys

**/s/ Brian K. Murphy**
Brian K. Murphy (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

Anthony I. Paronich (*pro hac vice* to be filed)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com