## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JAMES EVERETT SHELTON, individually and on behalf of all those similarly situated, | Case No. 1:19-cv-01378-PAG |
| Plaintiff, | Judge: Hon. Patricia A. Gaughan |
| v. | |
| RESORTCOM INTERNATIONAL, LLC, | |
| Defendant. | |

## DEFENDANT RESORTCOM INTERNATIONAL, LLC'S
## RULE 12(b)(2) MOTION TO DISMISS

Defendant ResortCom International, LLC, by and through its undersigned counsel, Blank Rome LLP, hereby moves this Court for an Order dismissing Plaintiff James Shelton's Complaint with prejudice pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. A supporting memorandum is attached.

**BLANK ROME LLP**

 *s/ David J. Oberly*
David J. Oberly (0088410)
1700 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Phone: 513.362.8711
Fax: 513.362.8798
Email: doberly@blankrome.com

Ana Tagvoryan
2029 Century Park East, Sixth Floor
Los Angeles, CA 90067
Phone: 424.239.3465
Fax: 424.239.3690
Email: atagvoryan@blankrome.com

Jeffrey N. Rosenthal
One Logan Square, 130 N. 18th Street
Philadelphia, PA 19103
Phone: 215.569.5553
Fax: 215.832.5533
Email: rosenthal-j@blankrome.com

*Counsel for ResortCom International, LLC*

2

## MEMORANDUM

### I.    Statement of the Case.

Following his receipt of a single prerecorded phone call on April 3, 2019 (the "Call"), which resulted in Plaintiff making a purchase, Plaintiff James Shelton ("Plaintiff") filed a putative class action against Defendant ResortCom International, LLC ("ResortCom") for allegedly violating the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.   But ResortCom is not a proper defendant, and Plaintiff has named the wrong party in this dispute.

ResortCom is a financial servicing company for loan and maintenance fee payments; ResortCom also services accounts for its clients, which are resorts.  ResortCom does ***not*** make outgoing telemarketing sales calls and did ***not*** make the Call to Plaintiff.  Rather, as conceded by Plaintiff, the Call was placed by, or at the direction of, third-party Vacation Discount International ("VDI").  Indeed, per the attached Affidavit, VDI ***admits*** to having the Call placed on ***its*** behalf. ResortCom has no relationship whatsoever with VDI.  Importantly, VDI is not ResortCom's agent, and VDI did not act with any actual/apparent authority from ResortCom in directing that the Call be placed to Plaintiff on April 3, 2019.  Nor did ResortCom ratify VDI's action after the Call.

Under these facts, this Court must dismiss Plaintiff's Complaint against ResortCom for lack of personal jurisdiction under Federal Rule 12(b)(2), as ResortCom—which is incorporated in Nevada, and maintains its corporate headquarters in Las Vegas, Nevada—is not subject to personal jurisdiction in Ohio.  Specifically, general jurisdiction does not exist because ResortCom is a Nevada company with a principal place of business in Nevada.   In addition, specific jurisdiction does not exist because ResortCom did not make the Call, nor can it be held vicariously liable for the entity that did.  Combined, this Court is compelled to dismiss Plaintiff's Complaint against ResortCom, with prejudice, because it lacks personal jurisdiction over ResortCom.

3

## II.     Factual & Procedural Background.

On June 14, 2019, Plaintiff initiated this putative class action against ResortCom seeking damages for a single, allegedly prerecorded phone call which Plaintiff claims violated the TCPA. In his Complaint, [Dkt. No. 1], Plaintiff alleges "Resortcom [sic] placed an automated and prerecorded telemarketing call to [his] cellular telephone on April 3, 2019." *See* Compl. ¶ 28. After receiving what Plaintiff contends was a prerecorded message, Plaintiff responded by pressing "1" so he could speak to a live individual who then offered Plaintiff a "discounted vacation package." *Id.* ¶¶ 29, 34.  At that point, Plaintiff "feigned interest" in the Call to "determine the identity of the caller." *Id.* ¶ 35.  Plaintiff was then transferred to another agent, who identified his employer as "Vacation Discount International." *Id.* ¶ 36.  In addition, after being transferred to the verification department, an agent of the verification department also confirmed the identity of the entity responsible for making the Call was VDI.  *Id.* ¶ 38.  During the Call, Plaintiff was informed he would receive a "certificate for a discounted vacation," and that a charge would appear on his credit card that "would identify the merchant as 'Holiday Billing.'" *Id.* ¶¶ 37-38.

After receiving an attempted charge on his credit card from "Holiday Billing," Plaintiff's credit card company allegedly informed him that the merchant's address was 6850 Bermuda Road, Las Vegas, Nevada 89119. *Id.* ¶ 42.  Plaintiff contends this address is ResortCom's headquarters and, as such, ResortCom is liable for any TCPA violations arising out of the Call. *Id.* ¶ 43.  Based on the foregoing, Plaintiff asserted a single cause of action against ResortCom for violating Section 227(b)(1)(A) of the TCPA, which bars calls made using an automatic telephone dialing system ("ATDS") or pre-recorded voice to a cellphone. *Id.* ¶¶ 11-12 (citing 47 U.S.C. § 227(b)(1)(A)(iii)).

Plaintiff's allegations are insufficient to confer personal jurisdiction over ResortCom for the call placed by VDI that has nothing to do with ResortCom.  As discussed, ResortCom is

4

incorporated in Nevada, and has its principal place of business in Las Vegas, Nevada. *See* Affidavit of Dennis Hershey, attached as **Exhibit 1**, ¶ 36 (hereinafter "Hershey Aff."). Critically, ResortCom has essentially no presence in, or contact with, the state of Ohio. Hershey Aff. ¶ 38. For instance, ResortCom has never had its principal place of business in Ohio. *Id.* ¶ 39. ResortCom also has no office space, place of business, directors, officers, or employees located in Ohio, nor is ResortCom registered to do business in Ohio. *Id.* ¶¶ 40-41.

ResortCom is a financial servicing company for loan, maintenance fee, and related payments for timeshare owners; it also handles some reservations for existing timeshare owners of ResortCom's resort clients who have provided their phone numbers and contact information. *Id.* ¶ 7. ResortCom does not, however, make outgoing sales calls of the type allegedly received by Plaintiff, nor does it hire third parties to make such calls on its behalf. *Id.* ¶¶ 7-8.

Contrary to Plaintiff's contention, ResortCom did ***not*** make any "prerecorded telemarketing call"—or any unsolicited call whatsoever—to Plaintiff on April 3, 2019, or at any other time for that matter. Hershey Aff. ¶ 5; Affidavit of John Payne, attached as **Exhibit 2**, ¶ 16 (hereinafter "Payne Aff."). In addition, the phone number identified in the Complaint as appearing on the Caller ID associated with the Call to Plaintiff—*i.e.*, (484) 576-5947—does not belong to, and has never been used by, ResortCom. Hershey Aff. ¶ 9. Further contrary to Plaintiff's Complaint, ResortCom does not market or sell vacation packages. *Id.* ¶¶ 6-7. Nor does ResortCom rely on any form of telemarketing to generate new business for its resort clients. *Id.* ¶¶ 6-8.

In reality, it was an agent of VDI, acting on VDI's behalf, that placed the Call to Plaintiff on April 3, 2019—not ResortCom. *See* Hershey Aff. ¶ 5; Payne Aff. ¶¶ 5-20; Compl. ¶¶ 36, 38. Critically, however, ResortCom does not now—nor has it ever—maintained any contractual or

other business relationship whatsoever with VDI.  Hershey Aff. ¶¶ 15-16; Payne Aff. ¶¶ 9-11, 15-20.  Specifically:

- ResortCom has no formal or informal business relationship with VDI of any kind (Hershey Aff. ¶¶ 14-16);

- ResortCom never entered into any agreement or relationship with VDI for the procurement of any type of marketing services (Hershey Aff. ¶ 15; Payne Aff. ¶ 10);

- ResortCom never explicitly or implicitly agreed that VDI could act as ResortCom's agent, and never authorized VDI to act on its behalf, or otherwise bind, ResortCom (Hershey Aff. ¶ 19; Payne Aff. ¶ 18);

- VDI operates completely independently of ResortCom, and ResortCom has never received any services from VDI, nor paid any amount of money to VDI for any reason (Hershey Aff. ¶ 17; Payne Aff. ¶ 11); and

- ResortCom does not exert any control over VDI's performance of its services, or its outbound calling activities, directly or indirectly. (Hershey Aff. ¶ 20; Payne Aff. ¶ 19).

## III.  Law & Argument.

### A.  Standard for Federal Civil Rule 12(b)(2) Motion to Dismiss.

A plaintiff bears the burden of establishing—with "specific facts"—that personal jurisdiction exists over a non-resident defendant.  *Kroger Co. v. Malease Foods Corp.* 437 F.3d 506, 510 (6th Cir. 2010).  A plaintiff must make this demonstration by a preponderance of the evidence.  *Id.*  In the face of a properly supported motion for dismissal, a plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  Only if the plaintiff meets the obligation of contesting the credible evidence presented by the defendant does the court resolve any factual disputes in plaintiff's favor.  *Wentz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Behagen v. Amateur Basketball Ass'n of the U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984); *Clark v. Meijer, Inc.*, 376 F. Supp. 2d 1077, 1082 (D. N.M. 2004).  The court may consider

6

affidavits in deciding a motion to dismiss for lack of personal jurisdiction. *Waldon F. Stump & Co. v. Delta Meltaforming Co.*, 793 F. Supp. 157, 158 (N.D. Ohio 1992).  In deciding such a motion, the Court may consider matters outside the pleadings without converting said motion into a motion for summary judgment. *See Marcellino v. Sears, Roebuck & Co.*, 2012 WL 2568079, at *13 (N.D. Ohio July 2, 2012); *see also Cleveland Tank & Supply, Inc. v. Hammonds Tech. Servs.*, 2015 U.S. Dist. LEXIS 54595, at *4 (N.D. Ohio Apr. 24, 2015) (Gaughan, J.).

**B.  ResortCom is Not Subject to Personal Jurisdiction in This Court.**

Where, as here, a federal court's subject matter jurisdiction stems from the existence of a federal question, *see* Compl. ¶ 7, personal jurisdiction exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).  In evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, the Sixth Circuit has consistently focused on whether there are sufficient minimum contacts between the non-resident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." *Bird v. Parsons*, 289 F.3d 865, 871-72 (6th Cir. 2002) (citing *Cole v. Mileti*, 131 F.3d 433, 436 (6th Cir. 1998) (addressing due process concerns rather than inquiring into proprietary of jurisdiction under Ohio's long-arm statute)).  Thus, the key issue here is whether ResortCom has sufficient contacts with Ohio such that the exercise of personal jurisdiction comports with principles of due process.

Personal jurisdiction may be based on either general or specific jurisdiction. *Id.* at 873. General jurisdiction exists if the defendant is "at home" in the forum state—*i.e.*, the corporation is incorporated in the forum state, or has its principal place of business therein. *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014).  In the absence of general jurisdiction, a court may exercise

7

specific jurisdiction over a defendant if its less substantial contacts with the forum give rise to the claim(s) pending before the court—that is, if the cause of action "arises out of" or has a substantial connection with the defendant's activity. *Hanson v. Denckla*, 357 U.S. 235, 250-53 (1958); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 2854 (2011). For a court to exercise specific jurisdiction, the suit must arise out of, or relate to, the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780 (2017). In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation. *Id.* This affiliation is absent here.

### 1. ResortCom is Not Subject to General Jurisdiction in Ohio Because it is Not "At Home" in Ohio.

General jurisdiction over ResortCom does not exist because ResortCom's contacts with Ohio are too attenuated for it to be considered "at home" in the state. Generally, a company is only deemed "at home" in the state (or states) where it was incorporated or where it has its principal place of business. *Daimler AG*, 571 U.S. at 137-39. Other than these two "paradigm" bases, general jurisdiction will exist only in "exceptional case[s]." *Id.* at 139 n. 19.

Here, ResortCom is not subject to general personal jurisdiction in Ohio because ResortCom is not "at home" in the state. It is undisputed that ResortCom is neither incorporated nor headquartered in Ohio. Hershey Aff. ¶ 37. Rather, ResortCom is both incorporated and headquartered in Nevada. *Id.* ¶ 36. Thus, general jurisdiction cannot stem from either of the two "paradigm" bases. Plaintiff, therefore, must show ResortCom has connections so substantial that it is "at home" in Ohio. *Daimler AG*, 571 U.S. at 127 (where the two paradigm bases are not present, a corporation is only subject to general personal jurisdiction where affiliations with the state are so "continuous and systematic" as to render the foreign corporation essentially at home

8

in the forum state). But ResortCom has essentially no presence in, or contact with, Ohio whatsoever. Hershey Aff. ¶ 38. For instance, ResortCom has never had its principal place of business in Ohio. *Id.* ¶ 39. ResortCom is not registered to do business in Ohio. *Id.* ¶ 40. And ResortCom has no office space, place of business, directors, officers, or employees located in Ohio. *Id.* ¶ 41. Under these undisputed facts, the only conclusion left for this Court to draw is that ResortCom is not subject to general personal jurisdiction in Ohio.

### 2. ResortCom is Also Not Subject to Specific Jurisdiction in Ohio Because it Did Not Place the Call and Could Not Be Vicariously Liable for the Entity that Did.

ResortCom is also not subject to the specific jurisdiction of this Court because it was not involved in the conduct that forms the basis of Plaintiff's Complaint. When determining whether specific jurisdiction exists, courts consider the "relationship among the defendant, the forum, and the litigation." *See, e.g., Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414, (1984) (citing *Schaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Here, there is no nexus between ResortCom, this Court, and this litigation because ResortCom did not place or authorize the alleged Call to Plaintiff and cannot be held vicariously liable for the entity that did under the facts alleged.

### a. ResortCom Did Not Place a Call to Plaintiff in Ohio.

Only the individual or entity that initiates a violative call can be directly liable for a TCPA violation. *In re DISH Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013) ("a seller is not directly liable for violation of the TCPA unless it initiates a call"). Here, Plaintiff has not and cannot allege specific jurisdiction exists based on direct liability because ResortCom did not initiate, authorize, or even know about the Call. Hershey Aff. ¶¶ 5, 14. Thus, to establish that this Court has specific jurisdiction over ResortCom, Plaintiff must demonstrate that ResortCom can be held vicariously liable for the entity that did initiate the Call. Plaintiff has not and cannot support this burden.

9

### b. Plaintiff Has Not, and *Cannot*, Allege Vicarious Liability for the Actions of VDI.

Both the Federal Communications Commission ("FCC") (which implements the TCPA) and federal courts (which interpret it) recognize vicarious liability under the TCPA pursuant to "federal common law principles of agency." *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 584 (S.D. Ohio 2016) (citing *In re DISH Network*, 28 F.C.C.R. at 6574 ("seller . . . may be held vicariously liable under federal common law principles of agency for violations of [the TCPA] that are committed by third-party telemarketers."); *Imhoff Invest., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015) ("The *DISH Network* decision further found that the seller may be *vicariously* liable for such violations under federal common law agency principles."); *Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x 365, 371 (6th Cir. 2015) (recognizing and exploring vicarious liability under the TCPA).  As such, both the Northern District of Ohio and the Sixth Circuit Court of Appeals have held federal common law agency principles apply to determine vicarious liability for violations of Section 227(b) of the TCPA.  *Siding & Insulation Co. v. Combined Ins. Group, Ltd., Inc.*, 2014 U.S. Dist. LEXIS 54065, at *9 (N.D. Ohio Apr. 17, 2014) (citing *In re DISH Network*, 28 F.C.C.R. at 6591-92).  In TCPA cases, the Sixth Circuit looks to the Restatement of Agency to determine if vicarious liability should be imposed.  *Johansen*, 218 F. Supp. 3d at 586 (citing *Keating*, 615 Fed. App'x at 371 (adopting *DISH Network*, which, in turn, looked to "a broad range of [federal common law] agency principles" for imposing liability)).

The recent case of *Johansen v. HomeAdvisor, Inc.*—which is both procedurally and factually analogous—illustrates that ResortCom cannot be held vicariously liable for the single Call at issue in this case.  In *Johansen*, the Southern District of Ohio found that an out-of-state defendant was not subject to personal jurisdiction in Ohio because it could not be held vicariously liable for the third party that placed the telephone calls at issue.  218 F. Supp. 3d at 588-89.  The

10

plaintiff had alleged the defendant, HomeAdvisor, was liable for TCPA violations based on calls placed by a third party, Lead House. *Id.* at 581. Lead House, however, was not placing its calls on behalf of HomeAdvisor. *Id.* Instead, Lead House placed calls to develop leads that it then sold to an entity called One Planet, which, in turn, sold the leads to HomeAdvisor. *Id.* The court held HomeAdvisor could not be vicariously liable for Lead House, as there was no baseline principal-agent relationship between the entities and, even if such a relationship had existed, HomeAdvisor had not been sufficiently aware of Lead House's wrongful conduct to effectively ratify such conduct. *Id.* at 585. Importantly, here, the relationship between ResortCom and VDI is even more attenuated than the relationship between HomeAdvisor and Lead House in *Johansen*, as in this case, the activities of VDI did not benefit ResortCom in any way whatsoever.

The central question posed by this Motion is whether the Court may assert personal jurisdiction over ResortCom based on a purported agency relationship with VDI—whether formal or apparent—or, in the alternative, whether ResortCom ratified the conduct of VDI. *Id.* (citing *DISH Network*, 28 F.C.C.R. at 6584); *see also Keating*, 615 Fed. App'x at 371-72; *In re Monitronics, Int'l, Inc.*, 2015 WL 1964951, at *5 (N.D. W. Va. April 30, 2015). Under the undisputed facts of this case, the only reasonable answer to this question is a categorical "no."

### i. There is No Actual Authority.

First, Plaintiff cannot establish vicarious liability against ResortCom under a theory of actual authority. Plaintiff does not, and cannot, allege that the actual caller acted as an agent of ResortCom, or that ResortCom controlled (or had the right to control) them and the manner and means of the calling campaign conducted by the purported agent. *See Keating v. Peterson's Nelnet, LLC*, 2014 WL 1891369, at *5 (N.D. Ohio May 12, 2014).

11

The Sixth Circuit adheres to the traditional definition of agency in determining the issue of actual authority, which contemplates "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *Keating*, 615 Fed. App'x at 372.

Applied here, there is no traditional agency relationship between ResortCom and VDI, and VDI did not act pursuant to the actual authority of ResortCom. VDI "was not acting or purporting to act as [ResortCom]'s agent when making the call." *Johansen*, 218 F. Supp. 3d at 586. Further, in identical fashion to HomeAdvisor in *Johansen*, ResortCom also did not direct VDI to call Plaintiff pursuant to a contract or otherwise. Hershey Aff. ¶ 21. Nor could it. ResortCom does not exert any control over VDI's outbound calling activities, directly or indirectly. Hershey Aff. ¶ 20; Payne Aff. ¶ 19; RESTATEMENT (THIRD) OF AGENCY, § 1.01, cmt. f ("An essential element of agency is the principal's right to control the agent's actions."); *Keating*, 2014 WL 1891369, at *5. Also, ResortCom did not make any manifestations to VDI that could reasonably be interpreted as a direction to call Plaintiff. Hershey Aff. ¶ 22; Payne Aff. ¶ 20. In this respect, ResortCom did not require VDI to engage in telemarketing nor did it provide Plaintiff's number to VDI. Hershey Aff. ¶ 22. At most, ResortCom attempted to process a payment for a resort client because Plaintiff had initially and knowingly authorized its processing before subsequently cancelling said payment. Thus, there is no agency relationship between ResortCom and VDI based on actual authority.

### ii. There is No Apparent Authority.

Second, Plaintiff cannot establish vicarious liability against ResortCom under a theory of apparent authority. Under this theory, a principal will incur liability for the acts of an agent if the principal held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority. *Keating*, 615 Fed.

12

App'x at 374 (quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998)). Apparent authority is present only when a third party's belief is traceable to manifestations of the *principal*. *Siding & Insulation Co.*, 2014 U.S. Dist. LEXIS, at *10-11 (citing RESTATEMENT (THIRD) OF AGENCY § 3.03 cmt. b).  In this regard, the apparent power of an agent is determined by the acts of the principal and not by the acts of the agent.  *Id.* at *11 (citing *Master Consol. Corp. v. BancOhio Nat'l Bank*, 575 N.E.2d 817, 822 (Ohio 1991); *Logsdon v. Main-Nottingham Inv. Co.*, 141 N.E.2d 216, 223 (Ohio App. 1956)).  Absent a manifestation by the principal to the third party, an agent has no apparent authority to act on behalf of the principal.  *Id.* at *12. As noted by the Northern District of Ohio, requiring some action on the part of the principal is a necessary limit on vicarious liability in the apparent agency context.  *Id.* at *12-13 (citing *Bridgeview Health Care Cntr. Ltd. v. Clark*, 2013 WL 4495221, at *4 n. 3 (N.D. Ill. Aug. 21, 2013)).

Here, Plaintiff has not alleged any facts (nor do any facts exist) to support a finding that ResortCom acted in a manner toward Plaintiff that manifested a conveyance of any authority for VDI to act on ResortCom's behalf.  Plaintiff has also not alleged any facts that ResortCom ever held VDI out to Plaintiff (or any other third party) as possessing sufficient authority to make any outbound calls on its behalf—let alone the authority to direct the Call to Plaintiff.

### iii.  ResortCom Did Not Ratify an Agent's Conduct.

Finally, Plaintiff cannot establish vicarious liability against ResortCom under a ratification theory of liability.  Under the Restatement, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Johansen*, 218 F. Supp. 3d at 586 (citing RESTATEMENT (THIRD) OF AGENCY § 4.01(1)).  A person or entity may ratify an act of another by "manifesting assent that the act shall affect the person's

13

legal relations" or by "conduct that justifies a reasonable assumption that the person so consents." *Id.* (citing RESTATEMENT (THIRD) OF AGENCY § 4.01(2)).

Importantly, however, the Restatement poses a critical restriction on what *type* of acts may be ratified.  Under the Restatement, a person or entity may ratify an act *only* "if the actor acted or purported to act as an agent on the person's behalf."  *Id.* (citing RESTATEMENT (THIRD) OF AGENCY § 4.03).  When an actor is not an agent and does not purport to be one, the agency-law doctrine of ratification is *not* a basis on which another person may become subject to the legal consequences of the actor's conduct.  *Id.* (citing RESTATEMENT (THIRD) OF AGENCY § 4.03 cmt. b).  This requirement limits the range of ratifiable acts to those done by an actor who is an agent or who is not an agent but pretends to be.  *Id.* (citing RESTATEMENT (THIRD) OF AGENCY § 4.01 cmt. b).

As several courts have explained, although a principal is liable when it ratifies an originally unauthorized tort (such as a TCPA violation), the principal-agent relationship is still a prerequisite and ratification can have no meaning without it.  *Id.*; *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *6 (S.D. Ohio July 10, 2015) (dismissing TCPA claim based on ratification theory for failure to plead principal-agent relationship).  Absent this prerequisite principal-agent relationship, a defendant simply cannot ratify the actions of third parties.  *Johansen*, 218 F. Supp. 3d at 587.

Further, to be liable for TCPA violations under a ratification theory, a principal must either: (1) have actual knowledge of all material facts about the agent's act; or (2) should have known of the actual facts because a reasonable person under the circumstances would have investigated further.  *Id.* (citing RESTATEMENT (THIRD) OF AGENCY § 4.01 cmt. b).

Here, Plaintiff has not and cannot establish vicarious liability against ResortCom under a ratification theory for several independent—but equally persuasive—reasons.  First, ratification is inapplicable here because Plaintiff has not alleged any facts (nor do any facts exist) that VDI

14

purported to be acting on ResortCom's behalf during the Call.  According to the Complaint, the agent(s) who spoke to Plaintiff repeatedly stated the Call was, in fact, being made on VDI's behalf. Compl. ¶¶ 36-38.   And there is no allegation ResortCom was ever mentioned during the Call.

Second, a ratification theory is also inapplicable because the requisite principal-agent relationship between ResortCom and VDI is absent.  *Johansen*, 218 F.Supp.3d at 586; *Murray*, 2015 WL 4204398, at *6; *see also* Payne Aff. ¶¶ 9-11, 15-20.

Finally, like defendant HomeAdvisor in *Johansen,* ResortCom similarly did nothing to ratify VDI's actions after-the-fact.  In *Johansen*, the court found that even if an agency relationship existed between HomeAdvisor and Lead House, the complaint did not adequately allege ratification because there were no facts tending to show HomeAdvisor knew or should have known Lead House was engaging in wrongful conduct.  *Id.* at 587-89.  So too here.  ResortCom was wholly unaware VDI was making calls in violation of any laws—to Plaintiff or to anyone else. *See* RESTATEMENT (THIRD) OF AGENCY § 4.06 cmt. d.  Taken together, ResortCom simply cannot be vicariously liable for the conduct alleged by Plaintiff on a ratification theory of liability.

In sum, Plaintiff cannot establish vicarious liability against ResortCom under actual authority, apparent authority and/or ratification.  ResortCom is thus not amenable to specific jurisdiction in Ohio.  *Naiman v. TranzVia LLC*, 2017 U.S. Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017) (holding jurisdiction did not exist because defendant was not vicariously liable for calls placed by a third-party marketing firm under any agency theory, even though third-party marketing firm placed the calls under a contract with the defendant to provide sales leads to the defendant).

*     *     *

15

## IV.    Conclusion.

Plaintiff's Complaint attempts to hold ResortCom, a non-resident Defendant with no connection to Ohio, liable for calls allegedly placed by a third-party over which ResortCom exerted no control.  Ultimately, ResortCom is not subject to general or specific jurisdiction in Ohio and, consequently, this Court must enter judgment in favor of ResortCom and dismiss Plaintiff's Complaint, with prejudice, under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Respectfully submitted,

**BLANK ROME LLP**

_s/ David J. Oberly_
David J. Oberly (0088410)
1700 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Phone: 513.362.8711
Fax: 513.362.8798
Email: doberly@blankrome.com

Ana Tagvoryan
2029 Century Park East, Sixth Floor
Los Angeles, CA 90067
Phone: 424.239.3465
Fax: 424.239.3690
Email: atagvoryan@blankrome.com

Jeffrey N. Rosenthal
One Logan Square, 130 N. 18th Street
Philadelphia, PA 19103
Phone: 215.569.5553
Fax: 215.832.5533
Email: rosenthal-j@blankrome.com

_Counsel for ResortCom International, LLC_

16

## CERTIFICATE OF COMPLIANCE

I, David J. Oberly, hereby certify under Rule 7.1(f) of the Local Rules of the United States District Court for the Northern District of Ohio that the foregoing Rule 12(b)(2) Motion to Dismiss complies with the page limitation of Rule 7.1(f). To date, this action has not been assigned a specified track.

_s/ David J. Oberly_
David J. Oberly (0088410)

_Counsel for ResortCom International, LLC_

17

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing ResortCom International, LLC's Rule 12(b)(2) Motion to Dismiss was served on all counsel of record on July 30, 2019 via the Court's ECF filing system and electronic mail, upon the following:

Brian K. Murphy, Esq.
Jonathan P. Misny, Esq.
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, Ohio 43215
murphy@mmmb.com
misny@mmmb.com

Anthony I. Paronich, Esq.
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 03043
anthony@paronichlaw.com

*Counsel for Plaintiff,*
*James Everett Shelton*

　*s/ David J. Oberly*　　　　　　　　
David J. Oberly (0088410)

*Counsel for ResortCom International, LLC*

18

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

JAMES EVERETT SHELTON,
individually and on behalf of all those
similarly situated,

                Plaintiff,

v.

RESORTCOM INTERNATIONAL, LLC,

                Defendant.

Case No. 1:19-cv-01378-PAG

Judge: Hon. Patricia A. Gaughan

**AFFIDAVIT OF DENNIS HERSHEY**

I, Dennis Hershey, hereby state and declare as follows:

1.     I have personal knowledge of the facts asserted herein and could competently testify if called upon to do so.

2.     I am the Chief Financial Officer of Defendant ResortCom International, LLC ("ResortCom"), a position I have held since 2015. I have personal knowledge of ResortCom's business practices.

3.     I am familiar with the case of *James Everett Shelton v. ResortCom International, LLC*, Case No. 1:19-cv-01378, in the U.S. District Court for the Northern District of Ohio (the "Action").

4.     The Complaint alleges ResortCom "made a prerecorded telemarketing call to Mr. Shelton's cellular telephone number in violation of the TCPA" on April 3, 2019 (the "Call"). Compl. ¶¶ 2, 28.

5.     This allegation is false; ResortCom did not make any "prerecorded telemarketing call"—or any unsolicited call whatsoever—to Plaintiff.

6.     The Complaint also alleges that "Defendant Resortcom [sic] provides a variety of services to resorts and similar entities, including marketing and selling discounted vacation

packages to increase travel to its clients' resorts," and that "[t]o generate new business for its clients, Resortcom [sic] relies on telemarketing." Compl. ¶¶ 22-23.

7.      The allegations in Paragraphs 22 and 23 of the Complaint are also false.  While ResortCom does provide a "variety of services to resorts," those services are limited to helping resorts manage their timeshare membership accounts with billing, processing, reservation, and other related services.   In other words, ResortCom is a financial servicing company for loan, maintenance fee, and related payments. ResortCom also handles some reservations for existing timeshare owners of ResortCom's resort clients who have provided their phone numbers and contact information.

8.      ResortCom only makes outgoing calls respecting financial and reservation services to timeshare owners of ResortCom's clients who have provided their phone numbers to ResortCom as part of the financial and reservation services that ResortCom provides to resorts. ResortCom does not, however, make outgoing calls of the type allegedly received by Plaintiff on April 3, 2019, nor does it hire third parties to make such calls on its behalf.

9.      The phone number identified in the Complaint as appearing on the Caller ID associated with the Call—*i.e.*, (484) 576-5947—does not belong to ResortCom and ResortCom does not recognize that number.

10.      Further, Paragraph 29 of the Complaint alleges the pre-recorded message received by Plaintiff consisted of the following: "Hi, because you are a valued Delta airlines customer you'll receive 999 dollar credit towards your next trip. For further details, press 1 now. To be placed on the do not call list, press 2 now."

2

11.     ResortCom does not operate any promotions and certainly not any promotions that would require the call recipient to be a "valued Delta airlines customer." Moreover, ResortCom does not provide any services or have any contractual relationship with Delta airlines.

12.     ResortCom provides financial and credit card merchant processing services to resorts, who, in turn, may hire third-party marketing vendors, such as Vacation Discount International ("VDI").

13.     As admitted to by Plaintiff, it was VDI (or an entity acting on VDI's behalf) that placed the Call to Plaintiff on April 3, 2019—not ResortCom.

14.     Not only did ResortCom not make the Call to Plaintiff, ResortCom also does not now—nor has it ever—maintained any contractual, business, or other relationship with VDI.

15.     ResortCom never entered into any agreement or relationship with VDI for the procurement of any type of marketing services.

16.     Nor does ResortCom have any other formal or informal relationship with VDI of any kind.

17.     VDI operates completely independently of ResortCom, and ResortCom has never received any services from VDI, nor paid any amount of money to VDI for any reason.

18.     ResortCom did not hire nor authorize VDI to make calls on behalf of ResortCom or any other person or entity.

19.     ResortCom never explicitly or implicitly agreed VDI could act as ResortCom's agent, and never authorized VDI to act on ResortCom's behalf, or otherwise bind, ResortCom.

20.     ResortCom does not exert any control over VDI or VDI's outbound calling activities, directly or indirectly.

3

21.     ResortCom did not direct VDI to call Plaintiff or any other person or entity via a contract or otherwise.

22.     ResortCom did not make any manifestations to VDI that could reasonably be interpreted as a direction to call Plaintiff or any other person or entity. In this respect, ResortCom did not require VDI to engage in telemarketing, nor did it provide Plaintiff's telephone number to VDI. ResortCom has no knowledge of how VDI may have obtained Plaintiff's telephone number.

23.     Instead, based on the allegations in the Complaint, it appears that ResortCom may have simply provided credit card merchant processing services for the entity on whose behalf VDI made the call.

24.     The Complaint alleges an agent of VDI informed Plaintiff that the charge that would appear on his credit could would identify the merchant as "Holiday Billing." Compl. ¶ 38.

25.     The Complaint further alleges Plaintiff received a notification from his credit card company that "Holiday Billing" had attempted to charge his credit card, and that the merchant's address was 6850 Bermuda Rd., Las Vegas, NV 89119.  Compl. ¶ 42.

26.     6850 Bermuda Rd., Las Vegas, NV 89119 is the location of ResortCom's headquarters.

27.     As stated, ResortCom functions as a middle-man and provider of financial and merchant account services for resort clients that do not have, or do not wish to open, merchant accounts in their own name.

28.     Merchant accounts opened by ResortCom in this fashion are for the benefit of the resort clients and ResortCom has no ownership of the funds held in those accounts. In some cases, ResortCom provides accounting services on those merchant accounts, but only executes transactions therein at the express directive of the resort clients.

4

29.     These merchant accounts for ResortCom's clients are part of ResortCom's master services agreement with ResortCom's credit card processor but the merchant accounts are actually the property of the resort clients. The account statements for the resort clients may list either ResortCom or myself (Dennis Hershey) in addition to the resort clients' names.

30.     Paragraph 44 of the Complaint alleges that "Resortcom represents on its website that it engages in telemarketing to sell certificates for discounted vacation packages to increase travel to its clients' resorts." That allegation is false and there is no such statement on ResortCom's website and ResortCom does not engage in that activity.

31.     Paragraph 45 of the Complaint alleges "Resortcom has previously been sued for violating the TCPA's automated calling provisions." While ResortCom has been named as a co-defendant in one other TCPA action, ResortCom was promptly dismissed from that action because, as in this situation, ResortCom did not make the calls in question.

32.     Paragraph 46 and 47 of the Complaint allege that "[p]rior to initiating this lawsuit, Plaintiff wrote a letter to Resortcom explaining the circumstances of the illegal call he received, asking it for any evidence of his consent to call him, which he asserted did not exist, and giving it an opportunity to explain its actions. . . Resortcom did not respond to Plaintiff's letter."

33.     The statement that ResortCom did not respond to Plaintiff's letter is false. On April 3, 2019, ResortCom received an unsolicited email from Plaintiff and immediately responded that same day with an email to Plaintiff at the email address provided by Plaintiff saying: "Good Afternoon James Shelton, Thank you for contacting ResortCom International. Based upon the information included in your message, we are unable to locate an active account for you. Please respond with the following information: Account number, Phone number, Email address, Name of the resort at which you are a member. Kind Regards, ResortCom International."

5

34.     On about April 15, 2019, ResortCom received an unsolicited letter from Plaintiff making allegations about TCPA matters. ResortCom took that letter seriously and on April 17, 2019, ResortCom called Plaintiff at the phone number provided by him to try to ascertain and resolve any concerns. Plaintiff did not answer or respond to that call. Having received no response from Plaintiff to ResortCom's email of April 3, 2019—or the telephone call on April 17, 2019—ResortCom closed its file on this matter until, without further notice or attempt to resolve any concerns, the Complaint was filed on June 14, 2019.

35.     Paragraphs 8 and 9 of the Complaint allege that "[t]he Defendant regularly engages in business in this district, including making telemarketing calls into this district and soliciting business from this district. . . the Defendant made a prerecorded telemarketing call to the Plaintiff in this district." Those allegations too are false.

36.     ResortCom is organized in Nevada, and has its principal place of business in Las Vegas, Nevada.

37.     ResortCom is neither incorporated nor headquartered in Ohio.

38.     ResortCom has essentially no presence in, or contact with, Ohio whatsoever.

39.     ResortCom has never had its principal place of business in Ohio.

40.     ResortCom is not registered to do business in Ohio.

41.     ResortCom has no office space, place of business, directors, officers, or employees located in Ohio.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 26, 2019, in Las Vegas, Nevada.

DENNIS HERSHEY

6

# EXHIBIT 2

## AFFIDAVIT OF JOHN CHARLES PAYNE

I, JOHN CHARLES PAYNE, hereby state and declare as follows:

1.     I have personal knowledge of the facts asserted herein and could competently testify if called upon to do so.

2.     I am the Owner and Chief Executive Officer of Grupo Gold Ball Sa de CV dba Vacation Discount International ("VDI"), a position I have held since 2011.  I have personal knowledge of VDI's business practices.

3.     VDI is dba used by Grupo Gold Ball Sa de CV which is a company organized in Mexico.

4.     I am familiar with the case of *James Everett Shelton v. ResortCom International, LLC*, Case No. 1:19-cv-01378, in the U.S. District Court for the Northern District of Ohio (the "Action").  I understand that VDI is mentioned in the Complaint as having made, or received by transfer, calls to Plaintiff James Shelton ("Plaintiff").

5.     VDI maintains a contractual relationship with its third-party telemarketing lead provider, Cloud Server ("Cloud"). Pursuant to the parties' Standard Services Agreement, Cloud provides VDI with telemarketing lead services.

6.     With respect to Cloud's telemarketing lead services, if Cloud is able to make a direct connection with the potential customer, *i.e.*, the customer picks up the phone call placed by Cloud, Cloud then qualifies the lead and transfers the call to VDI.

7.     When the call is transferred to VDI, a VDI representative then provides the potential customer with information regarding the details of promotional vacation packages.

8.     VDI, in turn, provides its resort clients with pre-qualified customers who utilize the promotional vacation packages offered through VDI's calls at the resort location(s).

9.      ResortCom is not a client of VDI.

10.     VDI does not now—nor has it ever—maintained any business relationship with ResortCom.

11.     VDI operates completely independently of ResortCom, and ResortCom has never received any services from VDI, nor paid any amount of money to VDI for any reason.

12.     On April 3, 2019, Cloud—acting on behalf of VDI—placed a call (the "<u>Call</u>") to Plaintiff in the United States (484) 626-3942 as shown on Exhibit "A" hereto.

13.     After the Call was picked up by Plaintiff, Plaintiff had the option to press "1" for further information or to press "2" to be removed from the calling list.  Plaintiff pressed "1" when prompted to hear further details regarding a promotional offer that was communicated to Plaintiff, Cloud then transferred the Call to VDI.

14.     After the Call was transferred to VDI, representatives of VDI spoke directly to Plaintiff.

15.     At all relevant times, VDI did not act on behalf of ResortCom as it relates to the April 3, 2019 Call to Plaintiff or otherwise.

16.     ResortCom had no involvement whatsoever in the April 3, 2019 Call that was made to Plaintiff.

17.     ResortCom did not hire nor authorize VDI to make calls on behalf of ResortCom or any other person or entity.

18.     ResortCom never explicitly or implicitly agreed that VDI could act as ResortCom's agent, and never authorized VDI to act on ResortCom's behalf, or otherwise bind, ResortCom.

19.     ResortCom does not exert any control over VDI or VDI's telemarketing activities, directly or indirectly.

20.     ResortCom did not make any manifestations to VDI that could reasonably be interpreted as a direction to call Plaintiff; nor did ResortCom provide Plaintiff's telephone number or any other information to VDI or any other entity.

I declare under penalty of perjury under the laws of Mexico that the foregoing is true and correct.  This Affidavit is provided only for informational and evidential purposes and is not intended to subject the undersigned or VDI to any laws or jurisdiction in the United States of America.

Executed on July 26, 2019, in Cancun, Quintana Roo, Mexico.

_____
JOHN CHARLES PAYNE

# EXHIBIT A

## Call Record of Shelton April 3, 2019

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 2019-04-03 12:15:02 | 1554311018.462086934 | Local | 484626█ | | Queue | 8950 | Local | ANSWERED | 16:14 |
| 2019-04-03 12:03:38 | 1554311016.462086928 | SIP | 484626█ | | Queue | 8903 | Local | ANSWERED | 27:38 |
| 2019-04-03 12:03:39 | 1554311016.462086927 | Local | 484626█ | | Queue | 8903 | Local | ANSWERED | 27:37 |
| 2019-04-03 12:03:35 | 1554311015.462086921 | SIP | 484626█ | 9902 | Queue | 9902 | Local | ANSWERED | 27:41 |